## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| MasterCard International Incorporated. ) | **Case No. 4:08-cv-565** |
| ) | |
| Plaintiff, ) | **FINAL JUDGMENT AND ORDER** |
| ) | **FOR PERMANENT INJUNCTION** |
| v. ) | **AND OTHER RELIEF** |
| ) | |
| Michael J. Yanda, an individual, ) | |
| d/b/a Indy Web Productions and ) | Hon. Stephan P. Mickle |
| Finance Globe Portals, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## I. INTRODUCTION

This action has come before the Court upon the pleadings and proceedings of

record. Plaintiff, MasterCard International Incorporated ("MasterCard"), and Defendant,

Mr. Michael J. Yanda, doing business as Indy Web Productions and Finance Globe

Portals (collectively, "Yanda"), have agreed to a compromise and settlement of

MasterCard's claims in this Civil Action and all claims, defenses and counterclaims that

were or could have been brought between them in this Civil Action. The parties

stipulate, consent to and agree that the findings of fact, conclusions of law and judgment

are agreed, and that this Final Judgment and Order for Permanent Injunction and Other

Relief ("Order") is entered by consent.

-1-

Rec'd i 113°09UsD F In1RM1043

319057v5

WHEREFORE, with the consent of the parties, through their undersigned attorneys, the Court enters the following agreed findings of fact, conclusions of law, and Order for the relief stated herein.

## II. STATEMENT OF FACTS

### A. MasterCard and the MASTERCARD Marks

MasterCard is a global payments solutions company. Through its predecessors in interest, MasterCard has been in the payment card business since 1966 and has operated under the MASTERCARD name and mark since at least as early as 1980. MasterCard manages a family of payment card brands, including MASTERCARD, throughout the United States and the world. MasterCard administers and licenses its member financial institutions and merchants to participate in the MASTERCARD payment program under the MASTERCARD and Red and Yellow Interlocking Circles Device trademarks and service marks (the "MASTERCARD Marks").

MasterCard owns numerous federal trademark registrations for its MASTERCARD Marks, including the following:

| Mark | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| MASTERCARD | 2,212,783 | Dec. 22, 1998 | Magnetic encoded cards; magnetic encoded card readers; telecommunications equipment, namely point of transaction terminals; and computer software for transmitting, displaying and storing transaction, |

-2-

| Mark | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | | | identification and financial information for use in the financial services, banking and telecommunications industries. |
|  | 2,077,221 | Jul. 8, 1997 | Travelers cheque services, namely the administration of issuance, redemption and processing of travelers cheques. |
| <br>This mark is lined for the colors red and yellow orange. | 2,168,736 | Jun. 30, 1998 | Travel assistance services, namely, arranging travel tours, making replacement and emergency reservations and booking for transportation. |
| <br>The mark is lined for the colors red and yellow. | 1,890,786 | Apr. 25, 1995 | Pens, pencils, pen stands, paper weights, letter openers, notebooks, metal book marks |
|  | 1,738,276 | Dec. 8, 1992 | Printed matter and publications; namely, credit cards and debit cards, pamphlets, brochures, newsletters and magazines of a financial nature. |

-3-

| Mark | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
|  | 1,814,279 | Dec. 28, 1993 | Financial services; namely, providing credit card, debit card, travelers cheque, travel financial assistance, cash disbursement, and transaction authorization and settlement services. |
| MasterCard | 1,604,606 | Jul. 3, 1990 | Printed matter and publications, namely bank cards, pamphlets, brochures, newsletters and magazines of a financial nature. |
| MASTERCARD | 1,398,272 | Jun. 24, 1986 | Textile machinery, namely carding machines. |
|  | 1,365,901 | Oct. 15, 1985 | Services, namely, providing bank card services. |
| MasterCard | 1,292,519 | Aug. 28, 1984 | Financial services- namely, assisting its members in the sale of travelers' cheques, integrated funds management programs, and money order services |
| MasterCard | 1,186,117 | Jan. 12, 1982 | Financial services- namely, providing bank card services. |

-4-

| Mark | Reg. No. | Reg. Date | Goods/Services |
|------|----------|-----------|----------------|
| MasterCard | 1,257,853 | Nov. 15, 1983 | Financial services-namely, providing bank card services. |

All of the above-referenced trademark registrations are valid and subsisting. All of the registrations are incontestable in accordance with 15 U.S.C. §§ 1065 and 1115(b). As a result, the registrations are conclusive evidence of MasterCard's exclusive right to use the MASTERCARD Marks in connection with the registered goods. 15 U.S.C. § 1115(b).

In addition to its trademark registrations, MasterCard has registered numerous domain names containing the name and mark MASTERCARD or variants thereof, including, *inter alia*, "MASTERCARD.COM", "MASTERCARD.NET", "MASTERCARD.ORG", "MASTERCARDONLINE.COM", "MASTERCARDONLINE.NET", and "MASTERCARDONLINE.ORG". The earliest of these registered domain names, "MASTERCARD.COM", was registered on July 27, 1994.

In 2002, MasterCard introduced a new product under the PAYPASS trademarks and service marks (the "PAYPASS Marks"), The product allows consumers to simply tap or wave their payment card on a specially-equipped merchant terminal that then transmits payment details wirelessly, eliminating the need to swipe the card through a reader.

MasterCard owns several federal trademark registrations for and a pending use-based application to register its PAYPASS Marks, including the following:

-5-

| Trademark | Reg./Ser. No. | Registration Date | Goods/Services |
|---|---|---|---|
| PAYPASS | 2,841,418 | May 11, 2004 | Computer hardware in the nature of smart cards containing proximity payment devices known as transponders; card readers for magnetically encoded cards and cards containing an integrated circuit chip; telecommunications equipment, namely, transponders; Financial services, namely banking services and credit card services; providing credit card and debit card services; advice relating to all the aforesaid services |
| MASTERCARD PAYPASS | 2,874,227 | August 17, 2004 | Financial services, namely banking services and credit card services, cash disbursements services, financial electronic transaction authorization and settlement services |
| MASTERCARD PAYPASS | 2,856,769 | June 22, 2004 | Computer hardware in the nature of smart cards containing proximity payment devices known as transponders, card readers for magnetically encoded cards and cards containing an integrated circuit chip, telecommunications equipment, namely transponders |

-6-

| Trademark | Reg./Ser. No. | Registration Date | Goods/Services |
|---|---|---|---|
| MasterCard paypass | 77/410,016 | Pending | Financial services, namely, banking services and credit card services; providing credit card and debit card services; advice relating to all the aforesaid services |

All of the above-referenced registrations are valid and subsisting. 15 U.S.C. §

1115(b). During the course of this case, the registration for PAYPASS, Reg. No.

2,841,418, became incontestable in accordance with 15 U.S.C. §§ 1065 and 1115(b) and

is conclusive evidence of MasterCard's exclusive right to use PAYPASS in connection

with the registered goods. 15 U.S.C. § 1115(b).

In addition to its PAYPASS trademark registrations, MasterCard registered

numerous domain names containing the name and mark PAYPASS and variants thereof,

including, *inter alia*, "PAYPASS.COM", "PAYPASS.ORG",

"PAYPASSCREDITCARD.COM", "PAYPASSCREDITCARDS.COM",

"FINDPAYPASS.COM" and "LOCATEPAYPASS.COM". The earliest of these

registered domain names, PAYPASS.COM, was registered on July 9, 1999.

MasterCard, its licensees and its predecessors-in-interest have sold many billions

of dollars worth of financial services under its MASTERCARD and PAYPASS Marks in

the United States and around the world and have spent substantial sums in advertising

their products and services under the MASTERCARD and PAYPASS Marks. As a result

of such extensive sales and advertising, the MASTERCARD and PAYPASS Marks have

become famous in the United States and internationally, and represent valuable goodwill.

-7-

## B. Yanda's Registration and Use of Infringing Domain Names

Yanda owns and operates a website at the domain name <financeglobe.com>.
The website offers numerous credit card-related goods and services, including those of
MasterCard and its competitors. As part of his business, Yanda registered forty (40)
infringing domain names incorporating or resembling MasterCard's MASTERCARD and
PAYPASS Marks (the "Infringing Domain Names"), as shown in the table below:

| Infringing Domain Name | Date of Registration |
|---|---|
| <internetmastercard.com> | October 29, 2004 |
| <mastercardoffer.com> | March 27, 2005 |
| <universalmastercard.com> | November 5, 2004 |
| <compassbankmastercard.com> | April 1, 2006 |
| <businessmastercards.com> | June 27, 2006 |
| <incomemastercard.com> | March 31, 2006 |
| <amazonmastercard.com> | June 29, 2006 |
| <mastercardcom.com> | November 13, 2003 |
| <visaormastercard.com> | August 8, 2005 |
| <gasmastercard.com> | June 16, 2004 |
| <mastercardnow.com> | May 22, 2004 |
| <mastercardcard.com> | June 24, 2005 |
| <wwmastercard.com> | March 24, 2008 |
| <standardmastercards.com> | August 27, 2005 |
| <applymastercard.com> | December 12, 2006 |
| <matercards.com> | January 28, 2005 |
| <platinummastercards.com> (Awarded to MasterCard) | February 20, 2005 |
| <keybankmastercard.com> (Awarded to MasterCard) | April 1, 2006 |

| Infringing Domain Name | Date of Registration |
|---|---|
| <newbpmastercard.com> (Awarded to MasterCard) | June 29, 2006 |
| <orchardbankmastercard.com> (Awarded to MasterCard) | March 3, 2005 |
| <overstockmastercard.com> (Awarded to MasterCard) | December 31, 2005 |
| <paypassvisa.com> (Awarded to MasterCard) | September 20, 2005 |
| <starbucksmastercard.com> (Awarded to MasterCard) | September 29, 2004 |
| <wwwshellmastercard.com> (Awarded to MasterCard) | November 26, 2005 |
| <americandreammastercard.com> (Awarded to MasterCard) | October 20, 2005 |
| <instantmastercards.com> (Awarded to MasterCard) | August 8, 2008 |
| <fastmastercard.com> (Awarded to MasterCard) | August 8, 2008 |
| <mastercardmerchants.com> (Awarded to MasterCard) | February 27, 2006 |
| <mastercardoffers.com> (Awarded to MasterCard) | December 21, 2004 |
| <mastercardwebsite.com> (Awarded to MasterCard) | September 13, 2005 |
| <paypassapplication.com> (Awarded to MasterCard) | September 19, 2005 |
| <paypassapplications.com> (Awarded to MasterCard) | September 19, 2005 |
| <paypasscredit.com> (Awarded to MasterCard) | September 20, 2005 |
| <paypassmastercard.com> (Awarded to MasterCard) | September 20, 2005 |

| Infringing Domain Name | Date of Registration |
|---|---|
| <paypassmastercards.com> (Awarded to MasterCard) | September 20, 2005 |
| <quickmastercard.com> (Awarded to MasterCard) | November 09, 2005 |
| <rebatemastercard.com> (Awarded to MasterCard) | February 21, 2005 |
| <wwwmastercardbusinessad.com> (Awarded to MasterCard) | December 28, 2005 |
| <wwwmastercardbusiness.com> (Awarded to MasterCard) | December 28, 2005 |
| <wwwpaypass.com> (Awarded to MasterCard) | September 19, 2005 |

Yanda's registrations of the Infringing Domain Names were without MasterCard's authorization or consent. The Infringing Domain Names are not Yanda's legal names and are not otherwise commonly used to identify Yanda. It is undisputed that Yanda registered the Infringing Domain Names well after MasterCard's adoption, registration and use of the MASTERCARD and PAYPASS Marks and registration of MasterCard's corresponding domain names.

When an Internet user enters one of the Infringing Domain Names into a web browser's address field, it typically resolves to <financeglobe.com>, where the user may view Yanda's credit card offers and click hyperlinks to those offers. For every unique user who views a <financeglobe.com> web page, Yanda receives page-view revenue. Additionally, Yanda receives click-through revenue for every user who clicks a link on the <financeglobe.com> website. After clicking, the user is redirected to a third party

website where the user may directly apply for credit cards and related goods and services, including those of MasterCard and its competitors.

As indicated in the preceding chart, MasterCard now owns twenty-four (24) of the Infringing Domain Names. MasterCard was awarded the domains pursuant to favorable rulings it received in three prior, separate complaints against Yanda under the Uniform Domain-Name Dispute-Resolution Policy (UDRP) of the Internet Corporation for Assigned Names and Numbers (ICANN). Yanda did not respond to these three prior UDRP complaints. *See MasterCard International Incorporated v. Michael J. Yanda,* Case No. D2008-0697 (WIPO June 27, 2008); *MasterCard International Incorporated v. Indy Web Productions,* Case No. D2008-0198 (WIPO Mar. 27, 2008); *MasterCard International Incorporated v. Michael J. Yanda, Indy Web Productions,* Case No. D2007-1140 (WIPO Oct. 8, 2007).

Following the UDRP rulings, MasterCard discovered that Yanda continued to maintain and use at least sixteen remaining Infringing Domain Names in association with his business. MasterCard filed a Complaint in the immediate case to recover the sixteen Infringing Domain Names on December 18, 2008, (the "Complaint") and concurrently filed a UDRP complaint to place the Infringing Domain Names on "Registrar lock". "Registrar lock" halts the potentially illegitimate transfer of the remaining Infringing Domain Names to a third party while the dispute is in process.

At the time the Complaint was filed, the majority of the sixteen Infringing Domain Names resolved to Yanda's website at <financeglobe.com>. Only two, <wwmastercard.com> and <orchardbankmastercard.com>, were passively held and did

-11-

not resolve to active web pages. One, <mastercardcom.com>, resolved to a web page containing a link to <financeglobe.com>. The domain <gasmastercard.com> resolved to a standard "parking page," which contained Internet hyperlinks to third party websites offering the goods and services of MasterCard and its competitors. Yanda generated revenue each time a consumer clicked through the parking page to the linked websites. As a whole, Yanda has derived substantial income from his <financeglobe.com> business and its related domain names, including the Infringing Domain Names.

On February 24, 2009, the UDRP panelist entered its decision awarding the remaining Infringing Domain Names to MasterCard. *MasterCard International Incorporated v. Michael J Yanda, Indy Web Productions*, Case No. D2008-1999 (WIPO Feb. 24, 2009). However, the ultimate disposition of the remaining Infringing Domain Names is subject to determination by this Court. *See Weber-Stephen Products Co. v. Armitage Hardware and Bldg. Supply, Inc.*, 54 U.S.P.Q.2d 1766 (N.D. Ill. 2000) (a decision rendered pursuant to a UDRP proceeding is not binding on the district court).

## C.    MasterCard's Complaint Against Yanda

On December 18, 2008, MasterCard filed its Complaint against Yanda alleging counts for cybersquatting under the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 and the common law of the various states; unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Florida Deceptive and Unfair Trade Practices Act, Florida Statute § 501.201 *et seq.* and the common law of the various states, including the State of Florida; and trademark dilution under Section 43(c)

-12-

of the Lanham Act, 15 U.S.C. § 1125(c), and Florida's anti-dilution statute, Fla. Stat. § 495.151. On February 13, 2009, MasterCard filed its First Amended Complaint alleging the same counts and adding domain names incorporating its PAYPASS marks.

Yanda, in his Answer, asserts as affirmative defenses that his registrations of the Infringing Domain Names were not done with the willful intent to harm. Further, Yanda asserts that his registration and use of the Infringing Domain Names were not in bad faith because they were done in reliance on Yanda's contracts with third party banking entities to promote the banking institutions' credit card services, including MasterCard's credit card services. Yanda further asserts that the contracts entered into with the third party banking institutions provide him the lawful right to promote MasterCard's credit card services. Yanda also contends that no dilution or tarnishing of MasterCard's trademarks occurred because Yanda was promoting MasterCard's services. In short, Yanda contends that he is not in competition with MasterCard and therefore causes no economic harm to MasterCard.

Yanda attached two contracts to his Answer in support of his affirmative defenses. The relevant provisions of the Nationwide Card Services ("NCS") contract state that Yanda "shall not . . . use any name, trademark, service mark, domain name or other intellectual property of any third party in connection with [Yanda's] use of the Network . . ." NCS Section 6.5 (vi) at p.8. In section 6.6(v) of the NCS contract, Yanda agrees "not to use or register any domain name that contains a Nationwide merchant trademark or copyrighted name, for example, Bank-of-America-offers.com would not be acceptable, whereas Credit-Card-Offers.com would be permissible under this provision."

*Id.* There is no language in the NCS contract authorizing or licensing Yanda to use the MASTERCARD or PAYPASS Marks in domain names or elsewhere.

Yanda further submitted the First Premier Bank ("Premier") contract as proof of his good faith intent. The subject of the Premier contract is the placement of banner advertisements on websites and e-mail marketing campaigns. The Premier contract does not reference domain name registrations or authorize or license Yanda to use MasterCard's MASTERCARD or PAYPASS marks in domain names.

## III. CONCLUSIONS OF LAW

### A. Yanda Violated the ACPA.

As the Complaint shows, MasterCard has established the *prima facie* elements for cybersquatting under the ACPA. 15 U.S.C. § 1125(d). The ACPA was enacted to combat cybersquatting, defined as the "deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001) (internal quotation marks and citation omitted). In order to state a claim under the ACPA, MasterCard must allege that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. Appx. 252, 256 (11th Cir. 2006) (not published in the Federal Reporter) (*citing Shields v. Zuccarini*, 254 F.3d 476, 482 (3rd Cir. 2001)). To establish the "bad faith intent to profit", the Court considers, but is

-14-

not limited to, the enumerated factors outlined in 15 U.S.C. § 1125(d)(1)(B)(i). *Virtual Works*, 238 F.3d at 270.

## 1. MasterCard owns the famous MASTERCARD and PAYPASS Marks.

In this case, it is undisputed that MasterCard owns the well-known and famous MASTERCARD and PAYPASS Marks, as well as the numerous domain names previously cited incorporating the MASTERCARD and PAYPASS Marks (*see, e.g.,* "MASTERCARD.COM", "MASTERCARDONLINE.COM", "PAYPASS.COM", "PAYPASSCREDITCARD.COM"). MasterCard's long use and extensive efforts to promote its brand have made the MASTERCARD and PAYPASS Marks famous throughout the United States and the world. The validity of MasterCard's ownership of and exclusive rights to the MASTERCARD Marks are further established by the conclusive evidence of MasterCard's incontestable federal trademark registrations for the MASTERCARD Marks and the mark PAYPASS. 15 U.S.C. § 1115.

## 2. The Infringing Domain Names are Confusingly Similar to MasterCard's Famous Marks.

The Infringing Domain Names are confusingly similar to MasterCard's marks. The overwhelming majority are confusingly similar to MasterCard's marks because they are incorporate the MASTERCARD or PAYPASS Marks in their entirety. *See Victoria's Cyber Secret Ltd. Partnership v. V Secret Catalogue, Inc.*, 161 F.Supp.2d 1339, 1347 (S.D. Fla. 2001) (finding "consumers are likely to be confused, misled or deceived into the mistaken belief that [registrant's] websites are endorsed by" the trademark owner,

-15-

where the domain names "completely incorporated the famous VICTORIA'S SECRET Mark into all four of its domain names").

Further, a large number of the Infringing Domain Names append a generic or common word to the MASTERCARD or PAYPASS Marks, such as <mastercardoffer.com>, <businessmastercard.com> or <paypassapplication.com>. The addition of a generic term does not lessen the confusing similarity of the marks. *See Omega S.A. v. Omega Engineering, Inc.*, 228 F.Supp.2d 112, 127 (D. Conn. 2002) (finding confusing similarity between defendant's <omegatime.com> and <omegawatch.com> domains and plaintiff's OMEGA mark for watches) (collecting cases). In several of the Infringing Domain Names, Yanda combined the MASTERCARD and PAYPASS Marks with the trademarks of well-known businesses that are unaffiliated with MasterCard, such as <visaormastercard.com>, <amazonmastercard.com>, <paypassvisa.com> and <starbucksmastercard.com>. Here, confusion is created because the juxtaposition of the marks incorrectly suggests an association, affiliation or sponsorship between the businesses.

In addition, several of the Infringing Domain Names are common misspellings of MasterCard's marks, such as <wwmastercard.com>, <matercards.com> and <wwwpaypass.com>. The misleading omission of a letter or period to divert Internet users who misspell the domain while typing it into the browser address field is a widely known practice referred to as "typo-squatting." *Shields*, 254 F.3d at 59 (finding "the intentional registration of domain names that are misspellings of distinctive or famous names" is a type of conduct covered under the "confusingly similar" prong of the ACPA).

### 3. Yanda's Infringing Activities Evidence Yanda's Bad Faith.

The ACPA provides a safe harbor against a finding of bad faith in 15 U.S.C. §

1125(d)(1)(B)(ii) only if Yanda had a "reasonable belief" that the use of the Domain

Names was lawful. Here, as in the concurrent UDRP proceedings, Yanda asserted the

"reasonable belief" defense, arguing that he believed the contracts with NCS and Premier

authorized his registration and use of the Infringing Domain Names. *See MasterCard*

*International Incorporated v. Michael J Yanda, Indy Web Productions*, Case No. D2008-

1999 (WIPO Feb. 24, 2009). Although a UDRP panelist's final decision is not binding on

a federal district court, the reasoning of the panelist here is accurate and persuasive:

The Panel . . . does not find Respondent's story credible.

One problem with Respondent's account, which Respondent never
attempts to explain, is that the Premier Agreement was executed effective
September 23, 2006. That execution date postdates the registration of all
but two (<applymastercard.com> and <wwmastercard.com>) of the
Domain Names by many months or even years. The Premier Agreement
bears, in the lower left corner of most pages, a date of July 25, 2006,
which appears to suggest that a draft of this purported agreement was at
least under contemplation as of July 25, 2006. Even with this additional
two-month window of time, there are still only the same two Domain
Names whose registration by Respondent postdates that date.

With respect to the NCS Agreement, the version annexed to the Response
does not bear a signature, an execution date, or an effective date. It
appears, indeed, to have been printed on the same date
(February 11, 2009) as the Response was submitted to the Center. The
Panel can give no credence to the NCS Agreement as a motivating factor,
much less a legitimate motivating factor, in Respondent's decision to
register any of the Domain Names.

It is simply impossible to credit Respondent's account of his motivations,
given the chronology of events laid before the Panel. . . . In addition, . . .
the purported contracts upon which Respondent relies do not appear to
confer on Respondent the right to use Complainant's mark in the manner
claimed by Respondent.

-17-

Moreover, if Yanda had a reasonable belief that the third party contracts provided him with rights to use MasterCard's marks in domain names, it would be reasonable to expect Yanda to assert those rights in response to at least one of the *three* prior UDRP proceedings in which he was involved. Yanda, however, opted not to submit a single response. Even if Yanda was at one time innocently unaware of MasterCard's rights, or the impropriety his registering and using the Infringing Domain Names, he cannot claim such ignorance after his receipt of the UDRP complaints, the decisions rendered in those UDRP proceedings, and the subsequent award and transfer of the domains to MasterCard.

Yanda also argues that his registrations were not done with the willful intent to harm. But simply denying bad faith intent is "insufficient to demonstrate lack of bad intent." *Victoria's Cyber Secret*, 161 F.Supp.2d at 1349 ("To hold that all such individuals may qualify for the safe harbor would frustrate Congress' purpose by artificially limiting the statute's reach.")

In short, with constructive and actual knowledge of MasterCard's rights, Yanda registered, maintained and used the Infringing Domain Names to divert visitors from MasterCard's websites to Yanda's website for commercial gain, based on the confusion and deception as to source, sponsorship, affiliation or endorsement, with MasterCard and its MASTERCARD and PAYPASS Marks. *See, e.g., Advance Magazine Publishers Inc. v. Vogue Intern*, 123 F. Supp. 2d 790 (D.N.J. 2000) (finding bad faith intent to divert users for commercial gain where defendant's domains, which incorporated plaintiff fashion company's trademark, resolved to defendant's website offering fashion goods and services). The same reasoning holds true for the domain <gasmastercard.com> which

-18-

resolved to a standard "parking page," because it also contained links to the goods and services of MasterCard and its competitors. Although the Infringing Domain Names <wwmastercard.com> and <orchardbankmastercard.com> were passively held and did not resolve to an active website, bad faith may still be inferred – particularly given Yanda's pattern of redirecting the Infringing Domain Names to his website. *See, e.g., Northern Light Technology, Inc. v. Northern Lights Club*, 236 F.3d 57 (5th Cir. 2002), cert. denied, 121 S.Ct. 2263 (2001) ("Based on defendants' apparent modus operandi of registering domain names containing the famous trademarks of others in the hope that the famous trademark owner will be willing to reclaim its intellectual property rights, the district court reasonably concluded that defendants acted according to script in this case."). Moreover, Yanda's *en masse* registration and use of approximately forty Infringing Domain Names containing the famous MASTERCARD and PAYPASS Marks displays a pattern of infringing conduct.

In sum, MasterCard has established, and Yanda does not dispute, that (1) Yanda has no rights or legitimate interest with respect to the Infringing Domain Names; (2) the Infringing Domain Names are confusingly similar to MasterCard's name, the MASTERCARD and PAYPASS Marks, and MasterCard's domain names; (3) Yanda registered the Infringing Domain Names with the intent to divert consumers from MasterCard's online location to the <financeglobe.com> website for commercial gain based on the confusing similarity with MasterCard's marks; (4) Yanda is not and has not engaged in any *bona fide* offering of goods or services in connection with the Infringing Domain Names; (5) Yanda is not and has not done any legitimate, non-infringing

business under the MASTERCARD and PAYPASS Marks; (6) Yanda did not make a legitimate noncommercial or fair use of the Infringing Domain Names; and (7) Yanda registered multiple Infringing Domain Names with knowledge of their confusingly similarity to MasterCard's famous marks. As these issues are not in dispute, these facts support a finding of bad faith pursuant to the factors set forth in the ACPA. 15 U.S.C. § 1125(d)(1)(B)(i). Accordingly, a violation of the ACPA has been established.

## B. Yanda Committed Trademark Infringement and Unfair Competition.

To prevail on its trademark infringement and unfair competition claims under the Lanham Act and state law, MasterCard must show that (1) MasterCard has trademark rights in the MASTERCARD and PAYPASS Marks, (2) Yanda used the MASTERCARD and PAYPASS Marks; (3) Yanda's use of the marks occurred in commerce; (4) Yanda used the marks in the connection with the sale or advertising of any goods; and (5) Yanda's use of the marks is likely to confuse consumers. *North American Medical Corp. v. Axiom Worldwide*, 522 F.3d 1211, 1218 (11th Cir. 2008) (quotations and citations omitted); 15 U.S.C. § 1125(a); 15 U.S.C. § 1114. The analysis of trademark infringement and unfair competition claims under the Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et. seq.* and the Florida common law of unfair competition "is the same as under the federal trademark infringement claim." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003) (citations omitted); *see also Planetary Motion, Inc. v. Techplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).

-20-

The parties do not dispute that MasterCard owns incontestable federal registrations for the MASTERCARD Marks and the PAYPASS mark. These incontestable registrations are conclusive evidence of the validity of the MASTERCARD Marks and the PAYPASS mark. 15 U.S.C. § 1115(b). As a result of MasterCard's extensive sales, advertising and promotion, MasterCard has acquired substantial goodwill in the MASTERCARD Marks, and they have undisputedly become famous. MasterCard's ownership of the MASTERCARD and PAYPASS Marks, and their subsequent fame, predates Yanda's registration and use of the Infringing Domain Names.

Likewise, there is no dispute that Yanda used the MASTERCARD and PAYPASS Marks by registering the Infringing Domain Names and associating the Infringing Domain Names with Yanda's website. Yanda does not deny that he used the marks in connection with the sale and advertising of credit card-related goods and services at <financeglobe.com>. "The nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's "in commerce" requirement." *Planetary Motion*, 261 F.3d at 1195 (quoting *Planned Parenthood Federation of America, Inc. v. Bucci*, 1997 WL 133313 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 920 (2nd Cir.), *cert. denied*, 525 U.S. 834 (1998)).

In assessing likelihood of confusion, courts in the Eleventh Circuit examine several factors, including (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) defendant's intent and (7) actual

-21-

confusion. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997).

The MASTERCARD Marks are undisputedly famous and, therefore, are strong and entitled to a broad scope of protection. *See James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir. 1976) ("A mark that is strong because of its fame or its uniqueness, is more likely to be remembered and more likely to be associated in the public mind with a greater breadth of products or services than is a mark that is weak.").

Moreover, the striking similarity of the MASTERCARD and PAYPASS Marks and the Infringing Domain Names weighs heavily in favor of a finding of likelihood of confusion. No doubt, the value of the Infringing Domain Names to Yanda arose solely from their confusing similarity to the MasterCard name, MasterCard's domain names, and the MASTERCARD and PAYPASS Marks. In fact, the Infringing Domain Names so resemble the MASTERCARD and PAYPASS Marks in sight, sound and appearance that confusion in inevitable. *See Cardservice Int'l v. McGee*, 950 F. Supp. 737 (E.D. Va. 1997) (ordering defendant to relinquish "cardservice.com" domain name used to market credit and debit card processing services due to likely confusion with plaintiff's identical services sold under the registered mark CARDSERVICE INTERNATIONAL), *aff'd without op.,* 129 F.3d 1258 (4th Cir. 1997). As previously stated, the slight misspelling or the addition of generic or non-distinctive terms to the famous MASTERCARD and PAYPASS Marks in the Infringing Domain Names does not reduce their confusing similarity.

-22-

This confusion is exacerbated by the overlap in the goods and services associated with MasterCard's marks and the Infringing Domain names. Yanda offers credit card-related goods and services, and MasterCard is a world recognized provider of credit card-related goods and services. As discussed above, Yanda registered and used the Infringing Domain Names with bad faith intent.

In *Panavision, Int'l v. Toeppen*, the court recognized that "[a] significant purpose of a domain name is to identify the entity that owns the web site", and found that customers searching for a company's website will often search using a domain name identical or similar to the company's name or mark. 141 F.3d 1316, 1327 (9th Cir. 1998) *(citing Cardservice*, 950 F. Supp. at 741). Similarly, Yanda recognized that users would believe that the Infringing Domain Names were affiliated with MasterCard. Users searching for MasterCard's websites were instead redirected to Yanda's website and the websites of MasterCard's competitors. *See, e.g., Nissan Motor Co., Ltd. v. Nissan Computer Corporation*, 89 F.Supp.2d 1154, 1164 (C.D.Cal. 2000), *aff'd. without opinion*, 246 F.3d 675 (9th Cir. 2000) (finding a "diversion of a consumer's initial interest in" plaintiff's products where defendant registered a domain name identical to plaintiff's business name); *North American Medical*, 522 F.3d at 1221 ("[T]here is nevertheless initial interest confusion in the sense that, by using [the trademark] to divert people looking for [the plaintiff's] web site, [the competitor] improperly benefits from the good will that [the plaintiff] has developed in its mark") (quotations and citations omitted). Yanda undisputedly profited from these instances of initial interest confusion.

-23-

Taken as a whole, these factors support a finding that Yanda's registration and use of the Infringing Domain Names likely caused confusion and deception as to source, sponsorship, affiliation or endorsement, with MasterCard and its MASTERCARD and PAYPASS Marks. Accordingly, MasterCard has established trademark infringement and unfair competition under the Lanham Act and Florida state law.

## C.     Yanda's Conduct Dilutes MasterCard's Famous Marks.

Yanda's acts constitute dilution of MasterCard's famous MASTERCARD and PAYPASS Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and Florida's anti-dilution statute, Fla. Stat. § 495.151. *See Victoria's Cyber Secret*, 161 F.Supp.2d at 1355-56 (under federal law and Florida law, the dilution analysis is identical). The Lanham Act defines dilution by blurring as an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c). Dilution can occur "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." *Id.*

To establish dilution, MasterCard must prove that (1) its MASTERCARD and PAYPASS Marks are famous; (2) Yanda registered the Infringing Domain Names after MasterCard's Marks became famous; (3) the Infringing Domain Names diluted the MASTERCARD and PAYPASS Marks; and (4) Yanda's use is commercial and in commerce. *Victoria's Cyber Secret*, 161 F.Supp.2d at 1354.

As Yanda concedes, the MASTERCARD and PAYPASS Marks are famous, and Yanda registered and used the Infringing Domain Names well after the MASTERCARD

-24-

and PAYPASS Marks became famous. The registration and use of the Infringing Domain Names in association with the sale of credit card-related goods and services through the <financeglobe.com> website or alternative parking pages is an archetypal "use in commerce" for purposes of the Act. *Victoria's Cyber Secret*, 161 F.Supp.2d at 1355.

In addition, Yanda promotes MasterCard's services by registering the Infringing Domain Names without MasterCard's authorization or consent. Yanda's registration and use "lessens the capacity" of MasterCard "to identify and distinguish its goods and services by means of the Internet" because MasterCard "is not currently free to use its mark as its domain name." *Intermatic Inc. v. Toeppen*, 947 F.Supp. at 1240.

Moreover, Yanda's registration and use of the Infringing Domain Names deprives MasterCard of the ability to control the nature and quality of the goods and services offered under its MASTERCARD and PAYPASS Marks. *Id.* Therefore, Yanda's registration of the Infringing Domain Names and the resulting use in connection with Yanda's website and parking page has diluted MasterCard's famous MASTERCARD and PAYPASS Marks.

## IV. SETTLEMENT AGREEMENT

In connection with this Final Judgment by consent, MasterCard and Yanda have entered into a settlement agreement (the "Settlement Agreement"), the terms of which are hereby incorporated by reference.

**WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**

**THAT:**

1.      Yanda , an individual, and all others in active concert or participation with him, including as his agents, servants, employees, successors and assigns, are permanently enjoined and restrained from the following conduct, unless MasterCard expressly grants permission otherwise:

> A.      using the MASTERCARD Marks, the PAYPASS Marks or the Infringing Domain Names in any manner;

> B.      registering or maintaining any registration of the Infringing Domain Names, or any other names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise similar to the MASTERCARD or PAYPASS Marks;

> C.      using the Infringing Domain Names or any other names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise similar to the MASTERCARD or PAYPASS Marks or any translation thereof;

> D.      using any names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise similar to the MASTERCARD or PAYPASS Marks on any website or websites of Yanda;

> E.      using any names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise similar to the

MASTERCARD or PAYPASS Marks in any buried code,

metatags, search terms, keywords, key terms, hit generating pages,

or any other devices used, intended, or likely to cause any website

or websites of Yanda to be listed by any Internet search engines in

response to any searches that include any terms identical with or

similar to the MASTERCARD or PAYPASS Marks;

F.     otherwise infringing the MASTERCARD or PAYPASS Marks;

G.     making any description or representation stating or implying that
       MasterCard's goods or services, domain names, or web sites are in
       any way affiliated, associated, authorized, sponsored, endorsed or
       otherwise connected with Yanda; and

H.     any other conduct that is likely to cause confusion or to cause
       mistake or to deceive as to the source, affiliation, connection, or
       association of Yanda's domain name, Yanda's web sites, products
       or services, with MasterCard.

2.     That Yanda and the Registrars of the Infringing Domain Names shall
transfer the Infringing Domain Names to MasterCard.

3.     Yanda further agrees to pay MasterCard the sum of money separately
agreed between the parties according to the schedule separately agreed to between the
parties.

3.      Should MasterCard be required to move the Court to enforce this

judgment, MasterCard shall be entitled to recover its reasonable attorneys' fees and costs

related to that enforcement.

4.      This Court shall retain jurisdiction over this action for purposes of

construing and ensuring compliance with this Order.

**IT IS SO ORDERED:**

Date: 11/5/89

United States District Judge

**CONSENTED AND AGREED TO:**

On behalf of MASTERCARD
INTERNATIONAL INCORPORATED

David P. Healy
LAW OFFICES OF DAVID P. HEALY, PL
2846-B Remington Green Cr.
Tallahassee, Florida 32308
(850) 222-5400 Telephone
(850) 222-7339 Facsimile

-and-

Mark V.B. Partridge
Alexis E. Payne
David Beeman
PATTISHALL, McAULIFFE, NEWBURY
HILLIARD & GERALDSON LLP
311 South Wacker Drive, Suite 5000
Chicago, Illinois 60606
Telephone: (312) 554-8000
Facsimile: (312) 554-8015

By: ⟋⟍⟍⟍⟍⟍ 94041

Attorneys for Plaintiff,
MasterCard International Incorporated

Dated: /0/27/09

On behalf of MICHAEL J. YANDA

Dennis A. Creed III
ROBBINS EQUITAS
LAWYERS & COUNSELORS
2639 Dr. MLK Jr. Street N
St. Petersburg, Florida 33704
(727) 822-8696 Telephone
(727) 471-0616 Facsimile

By: ⟍⟍⟍⟍

Attorney for Defendant,
Michael J. Yanda

Dated: 10 24 09

-29-